983 F.2d 1086
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Robert A. PERSKE, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 92-3150.
 United States Court of Appeals, Federal Circuit.
 Nov. 2, 1992.
 
 Before PAULINE NEWMAN, ARCHER and LOURIE, Circuit Judges.
 LOURIE, Circuit Judge.
 
 DECISION
 
 1
 Robert A. Perske petitions for review of the October 25, 1991 initial decision of the Administrative Judge (AJ), Docket No. SE08318910052-1, which became the final decision of the Merit Systems Protection Board on November 29, 1991 upon Perske's failure to timely petition the full Board for review. The AJ affirmed the Office of Personnel Management's (OPM) denial of his claim for an enhanced retirement annuity under the Civil Service Retirement Act (CSRA) on the ground that he did not "transfer" to a "supervisory" position within the meaning of 5 U.S.C. § 8331(21) (1988). Because we determine that the Board incorrectly applied the statutory transfer requirement, we vacate and remand.
 
 DISCUSSION
 
 2
 Perske seeks an enhanced retirement annuity under the CSRA for his work as a federal firefighter in the United States Department of Agriculture, Forest Service (USFS), from 1953 until his retirement in 1983. A federal employee is entitled to an enhanced annuity at age 50 if he has completed 20 years of service as a firefighter. 5 U.S.C. §§ 8336(c)(1), 8339(d)(1). "Firefighter" is defined as
 
 
 3
 an employee, the duties of whose position are primarily to perform work directly connected with the control and extinguishment of fires or the maintenance and use of firefighting apparatus and equipment, including an employee engaged in this activity who is transferred to a supervisory or administrative position.
 
 
 4
 5 U.S.C. § 8331(21) (emphasis added). Under OPM regulations, an employee is "transferred" pursuant to this provision if he is "transferred directly (i.e., without a break in service exceeding 3 days) from a primary position" to a "supervisory" position "whose primary duties are as a first-level supervisor of ... firefighters in primary positions." 5 C.F.R. §§ 831.902, 831.904(a)(1).
 
 
 5
 Perske began his career with the USFS on June 25, 1953 in a "primary" firefighting position as a Fire Control Aide (position 1) and was formally promoted to the position of Fire Control Assistant (position 2) on December 5, 1954. He divides the remainder of his thirty year career in the USFS into six different periods of service.[1] In his application for an enhanced annuity, Perske asserted that position 1 was a primary position and that the remainder of his positions qualified as "supervisory" positions. Perske maintained that he satisfied the transfer requirement on April 24, 1954 while he was in position 1 when he effectively assumed the supervisory duties of a Fire Control Assistant.
 
 
 6
 OPM denied Perske's claim, finding that his first two positions qualified as primary firefighter service, but that he did not meet the transfer requirement thereafter. The Board affirmed, finding that Perske's change in duties in April 1954 while he was in position 1 did not satisfy the transfer requirement. Relying on our decision in Morgan v. Office of Personnel Management, 773 F.2d 282, 285 (Fed.Cir.1985), the Board held:
 
 
 7
 Even if it is assumed for purposes of analysis that the appellant did perform some supervisory duties while in Position 1, this would not constitute a situation in which the appellant was "transferred" to a supervisory or administrative "position." While the appellant may have assumed some supervisory responsibilities, he has not shown that there was any formal change in his official position. There is no evidence that there was an actual transfer of position, or even a formal detail to a supervisory or administrative position.
 
 
 8
 (Emphasis added). The Board also found that position 2 was not a supervisory position, relying solely on a position description which stated that Perske would receive "guidance and advice from his superior," and the testimony of a USFS personnel management specialist that positions at and below GS 6 are usually primary, while positions at and above GS 7 are usually secondary. Finally, the Board found that position 3 was neither a primary nor a supervisory position.
 
 
 9
 We must "hold unlawful and set aside" a Board decision that is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1988).
 
 
 10
 Perske argues that the Board's interpretation and application of the transfer requirement was not in accordance with law since it misinterpreted Morgan as requiring a "formal change" in official position rather than the actual transfer of supervisory duties. Perske also argues that the Board's conclusion that positions 2 and 3 were not supervisory positions was not supported by substantial evidence. According to Perske, the Board relied only on generic position descriptions and ignored the record evidence that is specific to Perske's actual duties. Specifically, Perske points to an affidavit of his supervisor, John A. Mattoon, who stated that on April 27, 1954 he "specifically assigned to Mr. Perske the duties of Fire Control Assistant for our District" which included serving as "Crew Boss with regard to firefighting crews ... [and] the supervision of the fire crews involved in slash burning activities both prior to and subsequent to the peak fire season." Perske also points to a memo dated April 27, 1954 from Mattoon to Perske that outlined Perske's supervisory "responsibilities and duties as District Assistant." These duties specifically included "supervision" of all fire prevention work, "initiat[ion] and supervis[ion]" of the training of fire detection personnel, "supervision" of all fire control equipment, "organization" of burning crews for slash disposal, "supervision" of burning jobs, "supervis[ion]" of the work of fire prevention guards on campgrounds, and "supervis[ion]" of the entire government-funded planting program.
 
 
 11
 We agree that the Board incorrectly interpreted and applied the transfer requirement. In Morgan, we construed the transfer requirement and held that Congress intended it to cover only "permanent assignments to supervisory positions," not situations in which an employee merely undertakes temporary detail to supervisory work and thereafter returns to his regular nonsupervisory work. 773 F.2d at 285. Contrary to the Board's conclusion, however, Morgan does not require a "formal change," an "actual transfer," or a "formal detail" to a supervisory position, but only that the employee permanently undertake supervisory duties.
 
 
 12
 We have repeatedly emphasized that one's entitlement to an enhanced annuity under the CSRA must be determined according to the duties actually performed by the applicant. See Felzien v. Office of Personnel Management, 930 F.2d 898, 903; Cole v. Office of Personnel Management, 754 F.2d 984, 987 (Fed.Cir.1985); Ellis v. U.S., 610 F.2d 760, 765 (Ct.Cl.1979). Indeed, the legislative history of this provision compels such an analysis since Congress intended to provide young people with the incentive to pursue a career in firefighting and thereby encourage primary firefighters to accept promotions to supervisory positions. See Felzien, 930 F.2d at 901; Morgan, 773 F.2d at 286. The Board's interpretation of the transfer requirement is clearly inconsistent with these policies since it relies on formalities rather than focusing on whether Perske actually performed the types of supervisory duties contemplated by the statute. See Ellis, 610 F.2d at 765 ("An administrative decision out of step with the overall statute under which it is made must be set aside."). We conclude that the Board's interpretation and application of the transfer requirement was not in accordance with law since it erroneously required a formal transfer and failed to focus on the actual supervisory duties that Perske performed such as those evidenced by the Mattoon affidavit and the 1954 memo.[2]
 
 
 13
 The Board similarly placed undue emphasis on the position description when evaluating position 2 and did not adequately consider Perske's actual duties in that position. See Felzien, 930 F.2d at 903; Cole, 745 F.2d at 987; Ellis, 610 F.2d at 765.
 
 
 14
 We have considered all the government's arguments and find them to be unpersuasive. Accordingly, the Board's decision is vacated and remanded for fact-finding consistent with this opinion. The Board should determine whether Perske actually and permanently undertook supervisory duties on April 27, 1954 or in position 2 and, if so, whether other requirements of the statute and the regulations applicable in determining Perske's status were met.
 
 COSTS
 
 15
 Costs to Perske.
 
 
 
 [1]
 position 3 (9/25/55-1/11/58): Forester (District Timber Sales Officer), GS-7
 position 4 (1/12/58-4/29/61): Forester (Timber Management Assistant), GS-9
 position 5 (4/30/61-7/3/65): Forester (District Ranger), GS-11.
 position 6 (7/4/65-6/3/67): Forester (District Ranger), GS-11.
 position 7 (6/4/67-9/15/73): Forester (District Ranger), GS-12.
 position 8 (9/16/73-1/30/83): Supervisory Forester (Forest Fire Staff Officer), GS-12.
 
 
 [2]
 In light of our disposition of this case we need not address Perske's argument that the Board's finding regarding position 3 was not supported by substantial evidence